AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No.
Motorola cellular telephone Item #19WHI-5230-PR, )
currently secured with FCSO, 410 South High Street, ) 2:20-mj-271
Columbus, Ohio 43215 )

2020 APR 14  PM 1: 35

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A (incorporated by reference)

located in the _____ Southern _____ District of _____ Ohio _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B (incorporated by reference)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841 and 846 | Conspiracy to possess with intent to distribute controlled substances |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Ryan Marvich, Special Agent HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: April 14, 2020

City and state: Columbus, Ohio

Kimberly A. Jolson
United States Magistrate Judge

## ATTACHMENT A

The property to be searched is identified as a Motorola cellular telephone Whitehall Police Department item #19WHI-5230-PR, currently secured with Franklin County Sheriff's Office (FCSO), Columbus, Ohio 43215. This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

1.  All records on the Device described in Attachment A that relate to violations of 21 U.S.C. §§ 841 and 846 and involve Lashawn White since February 2019, including:

    a.  lists of customers and related identifying information;

    b.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c.  any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    d.  any information recording Lashawn White's schedule or travel from February 2019 to the present;

    e.  all bank records, checks, credit card bills, account information, and other financial records.

2.  Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

IN THE MATTER OF THE SEARCH OF A
MOTOROLA CELLULAR TELEPHONE
ITEM #19WHI-5230-PR, CURRENTLY
SECURED WITH FCSO, 410 SOUTH HIGH
ST, COLUMBUS, OHIO 43215

Case No. _____

### AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Ryan Marvich, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.     Your Affiant is a sworn Special Agent with the United States Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). Your Affiant has been a Special Agent within DHS since the Department's creation in May 2003.  Your Affiant has been assigned to the HSI Columbus office since February 2008, where your Affiant has been involved with narcotics investigations. Prior to becoming a Special Agent with HSI, your Affiant served as an Officer with the United States Secret Service, Uniformed Division beginning in January 1998.  In June 1999, your Affiant accepted a position as a Special Agent with the United States Secret Service. In May 2003, your Affiant transferred employment to become a Special Agent with the United States Customs

Service (USCS). In 2003, under the creation of the Department of Homeland Security, various components, including criminal investigators/special agents, with the USCS were merged with components, including criminal investigators/special agents, from the United States Immigration and Naturalization Service (INS) and formed U.S. Immigration and Customs Enforcement (ICE). Since then, criminal investigators/special agents and all related investigative functions of ICE have been moved into Homeland Security Investigations (HSI) within ICE.

3.     Your Affiant is familiar with the operation of illegal drug trafficking organizations in central Ohio and how these drug traffickers utilize cellular telephones and other computer equipment in furtherance of their drug trafficking activity.

4.     This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5.     The property to be searched is identified under Whitehall Police Department's item #19WHI-5230-PR, a Motorola cellular telephone, currently secured with the Franklin County Sheriff's Office (FCSO), 410 South High St, Columbus, Ohio 43215. The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

6.     On February 12, 2019, investigators with Homeland Security Investigations (HSI) and the Franklin County Sheriff's Office (FCSO) encountered Ruben Rodriguez Jr. who was found to be in possession of two kilograms of cocaine. Investigators originally located Ruben

2

Rodriguez Jr. on February 11, 2019 while they were conducting routine surveillance at a Red Roof Inn located at 4530 West Broad Street, Columbus. At that time, investigators observed a silver Ford Fusion bearing Texas license plate KZB9897 parked in the Red Roof Inn parking lot. Upon running this license plate in law enforcement databases, investigators learned that this vehicle was registered to a Michael Rene Ponce in Buda, Texas. Investigators also learned that Ponce was arrested in March 2008 in Austin, Texas as part of a large heroin conspiracy case involving over a dozen other co-conspirators. Ponce was subsequently convicted for violation of Title 21 USC Section 846 (conspiracy to possess with the intent to distribute heroin) and was sentenced to 57 months in federal prison. The law enforcement databases also showed no connections to Ponce and any individuals in Ohio.

7.     Investigators began surveillance on the Ford Fusion on February 11, 2019. Investigators observed that the car was driven by a male, later identified as Ruben Rodriguez Jr., and a female companion, later identified as Beslin Peraza, carried out various activities during the day.  The two ate lunch at a Bob Evans Restaurant located at 4331 West Broad Street, Columbus, Ohio. They shopped at a Walmart near Hilliard Rome Road in Columbus. They then went to see a movie at the AMC Starplex Columbus 10 located at 5275 Westpointe Plaza Drive, Columbus, Ohio.  Given the background of Rodriguez, and the history of the car, investigators suspected that the two individuals were making attempts to "kill time" which can be indicative as to drug activity, specifically awaiting delivery of possible drug proceeds. While Rodriguez and Peraza were inside the Walmart, FCSO Deputy Rob McKee ran his canine "Gator" around the silver Ford Fusion while it was parked in the Walmart parking lot. Gator gave a positive alert to the presence of narcotics inside the silver Ford Fusion. Eventually, Rodriguez and Peraza

3

checked into a different hotel, the La Quinta Inn and Suites located on 5510 Trabue Road, Columbus, Ohio.

8.      On February 12, 2019, investigators re-established surveillance on Rodriguez and Peraza as they traveled to 121 Stevens Avenue, Columbus, Ohio. Upon arriving, Rodriguez was observed entering this residence where he remained for approximately ten minutes. Following his departure from this residence, a deputy with FCSO conducted an investigative traffic stop on the vehicle Rodriguez was driving. During this traffic stop, a Franklin County canine gave a positive alert to the presence of narcotic inside the vehicle. During a subsequent search of the vehicle, approximately 2.0 kilograms of cocaine and $30,006.00 in U.S. currency were discovered. In a subsequent post-Miranda interview, Rodriguez stated that he was in Columbus for the purpose of overseeing the arrival of cocaine and heroin that was being sent to individuals at 121 Stevens Avenue, Columbus, Ohio. He admitted that the cocaine in his car had been sent to these individuals at 121 Stevens Avenue approximately 1-2 weeks ago, and he came to Columbus at that time to make sure these individuals received this cocaine. After they received this cocaine he went back to Texas. A short time later he learned that these individuals were not happy with the quality of the cocaine, so he was sent back up to Columbus.  When he arrived this time in Columbus, around February 9, 2019, he was directed by his boss in Mexico to retrieve the cocaine that was already delivered and to oversee the arrival of approximately 2 kilograms of heroin that was arriving via UPS. According to Rodriguez, when he was inside the residence located at 121 Stevens Avenue, Columbus, Ohio, he stated that he saw the 2 kilograms of heroin that was sent. It was at this time the individuals at this residence paid him a partial payment of approximately $30,000 for this heroin. This was the money seized by investigators during the traffic stop on his vehicle. Ruben Rodriguez Jr. was arrested on federal drug conspiracy charges,

4

specifically conspiracy to distribute heroin, at that time. He has subsequently been convicted of this charge in the Southern District of Ohio. Additionally, investigators have learned that an individual named Lashawn White rented 121 Stevens Avenue on August 30, 2017 and was still renting this residence through January 2020

9.      Additionally, investigators have learned that Lashawn White was arrested by the Ohio Highway Patrol (OHP) on April 1, 2018 after a traffic stop on Livingston Avenue in Columbus, Ohio. During this traffic stop, troopers found a small amount of cocaine in the vehicle and White had a loaded handgun under his thigh while seated in the driver's seat. According to the arresting OHP trooper, when the handgun was found, White stated that if they seized his gun, he would just get another one because he lives on Stevens Avenue. White was arrested at that time. He subsequently was released from custody pending further court hearings.

10.     On September 13, 2019, the Franklin County Sheriff's Office narcotics unit received an anonymous tip concerning suspected drug activity at 121 Stevens Avenue, Columbus, Ohio. In this tip, the caller stated that this residence receives heavy drug traffic all day and night. The individuals believed to be receiving the drugs enter the residence using the back door. Additionally, the caller stated that a U-Haul and a box van (later identified as a box truck, a blue 1994 GMC box truck with Ohio license plate PKU4756, registered to Rich Forever Investments LLC) are also used at the residence as part of the drug activity.

11.     Through November 4, 2019 through November 7, 2019, investigators conducted surveillance on 121 Stevens Avenue, Columbus, Ohio. During this surveillance, investigators observed constant activity at the residence. On every day of surveillance, investigators observed multiple individuals arriving at the residence and entering through the rear door and occasionally the front door. Once inside the residence, these individuals remained for short periods of time.

Based upon the training and experience of investigators, investigators know this type of activity is consistent with individuals purchasing narcotics. Investigators also observed a box truck parked in the rear of the residence, matching the description of "box van" in the previous tip to FCSO. The front of this vehicle could easily be described as a van or a truck. This vehicle was actually a blue 1994 GMC box truck with Ohio license plate PKU4756, registered to Rich Forever Investments LLC. According to the Ohio Secretary of State, Rich Forever Investments LLC, is run by a Stephanie Bouphavong and Larry Williams Jr. Investigators did observe a lot of pedestrian activity around this box truck during the surveillance. Investigators also observed individuals near the back door of this residence that were standing still near the truck and looking around the area, acting consistent with what investigators believed to be lookouts.

12.     On November 4, 2109, surveillance units observed a Honda Civic with California license plate 7PKZ470 arrive at 121 Stevens Avenue. This vehicle is registered to Stephanie S. Bouphavong, 1021 East Sarazen Ave, Fresno, California. A white female, matching the driver's license photograph of Stephanie Bouphavong, was observed exiting the Honda Civic and entering the front door of 121 Stevens Avenue. Further surveillance over the next few days observed Bouphavong at this residence on numerous instances.

13.     Using various law enforcement databases, investigators found the most current address for Stephanie Bouphavong as 4594 Ava Point, Hilliard, Ohio. Additionally, law enforcement databases show Bouphavong's Honda Civic with California license plate 7PKZ470 in the area of both 121 Stevens Avenue, Columbus, Ohio and 4594 Ava Point, Hilliard, Ohio on numerous occasions.

14.     On November 5, 2019, investigators observed Stephanie Bouphavong as she arrived at her residence located at 4594 Ava Point Hilliard, Ohio.

6

15.     On September 30, 2019, investigators identified a residence located at 2849 Drew Heights Place, apartment #206, Reynoldsburg, Ohio 43068 that they believed was being used as a possible "stash house" for storage and distribution of narcotics that was being supplied by individuals associated with the Latin Kings street gang in Chicago, Illinois. While investigators established 24-hour surveillance on this residence from October 18, 2019 through November 6, 2019, investigators observed that no one actually resided at this residence. Investigators did observe Lashawn White frequent this residence on numerous occasions while bringing boxes and bags into and out of this residence.

16.     On November 14, 2019, investigators executed a State of Ohio search warrant on the residence located at 121 Stevens Avenue, Columbus, Ohio. Upon executing this search warrant, investigators located numerous individuals inside the residence including Larry Williams Jr., who is the co-owner of Rich Forever Investments LLC with Stephanie Bouphavong. Found and seized from inside this residence were 210.85 grams of propanamide (fentanyl) or a mixture containing fentanyl, 19.79 grams of meth, 115.43 grams of cocaine and 8.35 grams of heroin and five firearms. These drugs were packed for individual sale and it was apparent to investigators that this residence was being used as a selling point for numerous kinds of narcotics. Many on the individuals located inside this residence were identified as narcotics users, while it was apparent to investigators that two individuals were in charge of selling the narcotics, including Larry Williams Jr. and Jeffrey Mason Ford. These two individuals appeared to be the ones living in the two bedrooms of the residence. Both bedrooms contained numerous narcotics packaged for individual sale and marked with bright multi-colored round stickers which showed the price and type of drug for sale. For example, investigators found a small clear baggie which contained clear crystal substance, believed to be methamphetamines. On this

7

baggie there was a green round sticker with "ice $10" printed in ink on it. There were many other clear baggies with other types of suspected narcotics found throughout the residence and most of these had similar stickers and markings on them identifying the type of narcotics and price. The narcotics were stored in metal cash boxes. Some of these cash boxes were black metal with a gray tray. The tray is made to hold coins while the cash would be placed under the tray, however at this residence investigators found narcotics and narcotic residue in the tray made to hold coins.

17.     Following the execution of this search warrant, investigators obtained information from a Confidential Source (CS#1) that had direct knowledge of the activities at 121 Stevens Avenue. According to CS#1, Stephanie Bouphavong would come to 121 Stevens Avenue every day to retrieve the money that had been collected that day from the sale of the narcotics. CS#1 stated that Stephanie Bouphavong would then take the money to her house for storage. CS#1 stated that approximately $2,000-$3,000 profit would be made every day at 121 Williams Ave which Stephanie Bouphavong would pick up. CS#1 also stated that Stephanie Bouphavong takes care of Larry William's children.

18.     On November 19, 2019, at approximately 8:20pm, HSI Special Agent Raterman observed Stephanie Bouphavong's Honda Civic with California license plate 7PKZ470 and the box truck, a blue 1994 GMC box truck, believed to be the "box van" previously described in the tip to FCSO, with Ohio license plate PKU4756, registered to Rich Forever Investments LLC, both parked immediately in front of 4594 Ava Point, Hilliard, Ohio.

19.     On November 21, 2019, at approximately 8:00am, investigators executed a State of Ohio search warrant at 4594 Ava Point, Hilliard, Ohio. Prior to executing this search warrant, investigators observed Stephanie Bouphavong's Honda sedan with California license plate 7PKZ470 parked immediately in front of 4594 Ava Point. Additionally, the blue box truck

bearing Ohio license plate PKU4756, registered to Rich Forever Investments, also parked in front of the residence.

20. On November 21, 2019, at approximately 7:15am, investigators observed Stephanie Bouphavong exit 4594 Ava Point, Hilliard, Ohio and enter her Honda sedan with California license plate 7PKZ470. Investigators also observed a female, approximately 16 years old, exit the residence and enter the passenger side of Bouphavong's vehicle. Investigators conducted surveillance on this vehicle as it departed the residence and eventually dropped the passenger off at South High School, 1160 Ann Street, Columbus, Ohio. After dropping off the passenger, Bouphavong drove her vehicle back to 4594 Ava Point, Hilliard, Ohio. Upon arriving at her residence, investigators approached her vehicle, identified themselves as law enforcement and explained to Bouphavong that they had a warrant to search her residence. Bouphavong provided her keys to her residence to investigators at that time. When investigators explained that they would like to ask Bouphavong some questions, she explained that she wouldn't speak with investigators without an attorney being present.

21. During the execution of this search warrant, some of the items found by investigators were as follows: a kilo press, 732.22 grams of propanamide, also known as fentanyl, 100.01 grams of cocaine , bundles of U.S. currency totaling $5,519.00, a Raven Arms MP25 .25 caliber pistol SN: 1847463, a Ruger P94 9mm caliber pistol SN: 308-53444 and a stolen pink Ruger LCP. 380 caliber pistol SN: 371378008. These narcotics, the currency and the firearms were all located in the master bedroom closet. Stephanie Bouphavong's U.S. Passport (full name: Stephanie Sounary Bouphavong) was also found in this closet. Also found during the execution of this search warrant was a manual kilo press located on the floor of the master bedroom. Investigators know that kilo presses are often used by narcotics traffickers to package

9

narcotics into tight bricks usually after "cutting" the narcotics with other "cutting" agents such as backing powder. This can, for example, make one kilogram of a narcotic mixture into two kilograms of a less concentrated mixture of the narcotic.

22.     During a search of Stephanie Bouphavong's Honda sedan with California license plate 7PKZ470, investigators found in the trunk two metal cash boxes that were some of the same type of cash boxes that were found to contain the narcotics at 121 Stevens Avenue on November 14, 2019. These cash boxes were black metal with a gray tray. The tray is made to hold coins while the cash would be placed under the tray. Additionally, investigators found the same type of round colorful stickers that were used on the baggies of narcotics at 121 Stevens Avenue, Columbus, Ohio as well as a digital scale and a security camera system.

23.     On November 25, 2019, investigators provided a subpoena to the management of The Groves apartment complex, which is the management for 4594 Ava Point, Hilliard, Ohio. This subpoena requested all information related to the application and lease of 4594 Ava Point, Hilliard, Ohio. According to the paperwork provided by The Groves management, Stephanie Sounary Bouphavong rented this unit on May 13, 2019 and the lease was for 13 months. Bouphavong was paying $1,241.00 per month for this apartment. Bouphavong provided her current employer for the application as AT&T, 1021 East Sarazen Avenue, Fresno, California. Stephanie Bouphavong was the only person on this lease.

24.     On November 21, 2019, at approximately 8:42am, investigators executed a State of Ohio search warrant at 669 South Kellner Drive, Columbus, Ohio. It had been determined that this was the residence of Lashawn White after he sold cocaine to a Whitehall Police Department confidential informant. Lashawn White was the only person found to be inside the residence during the execution of this search warrant. Some of the items found by investigators during this

10

search were as follows: 484.44 grams of a mixture of propanamide (fentanyl) and Tramadol, 9.46 grams of fentanyl, 18.14 grams of cocaine, 23.71 grams of a mixture of heroin and fentanyl, 3 pistols, one sawed-off shotgun, numerous cellphones including a Mototola cellphone (The Device) and approximately $20,363.00 in U.S. currency. Lashawn White was found to be the only person present inside this residence when this search warrant was executed.

25.     White was at the residence at the time of the search.  He was detained during the execution of the search warrant. White was read his Miranda rights on scene and he chose to waive his rights and make a voluntary statement. In the post-Miranda interview of Lashawn White, investigators mentioned to White that investigators already knew that there were illegal drugs, guns, and money in the house. White didn't deny it. He was asked how much was in the house and where it was located. At this point, White asked for his attorney before speaking any further. Investigators attempted to contact White's attorney but was unable to reach him. The interview was discontinued at that point.

26.     While the home was being searched, White's girlfriend, Antionette Horton, arrived at the residence. Investigators spoke to her in the front yard. She claimed that she didn't know anything about White having anything illegal in the home. When the room with the narcotics was brought up, she claimed that she never went in there and that was "his space."

27.     On November 21, 2019, investigators executed a State of Ohio search warrant on at 2849 Drew Heights Place, apartment #206, Reynoldsburg, Ohio 43068. There was no one found to be inside this residence upon the execution of the search warrant. During this search warrant investigators located numerous empty wrappers which appeared to be wrappers for kilogram quantities of narcotics. On January 7, 2020, the Central Ohio Regional Crime Lab reported that thirteen (13) of the fifteen (15) packages seized from 2849 Drew Heights Place,

11

Unit #206, Reynoldsburg, Ohio were found to contain methamphetamine residue. Based upon the training and experience of investigators and the size and shape of the empty wrappers, investigators believe that this was in fact 15 kilograms of methamphetamine that had been distributed prior to the execution of the search warrant on the residence. Also found during the execution of this search warrant was .70 grams of a mixture containing fentanyl and inside the master bedroom was located four cellular telephones.

28.     On December 12, 2019, Your Affiant obtained a federal search warrant allowing investigators to examine a Samsung cellular telephone which was found on the floor in the master bedroom in Lashawn White's residence at 669 South Kellner Drive, Columbus, Ohio. In a subsequent examination of this cellular telephone, investigators observed numerous text messages consistent with discussions involving narcotics trafficking. These text messages include discussions concerning "zannie bars" known to be Xanax, discussions where individuals are asking the user of this cellphone for quantities of unnamed items (believed to be narcotics) and one text message where the user of this cell phone states, "Don't open my office!!!! I mean it... put the comb back and stay outta there.." Investigators believe this "office" is the room at 669 South Kellner Road, Columbus, Ohio which continued the narcotics. Additional text messages were located that stated by name that the user of this cell phone was Lashawn White. Photographs of Lashawn White were also located on this cellphone.

29.     On February 6, 2020, investigators obtained a federal search warrant for the search of Lashawn White's LG cellular telephone, identified as Whitehall Police Department's item #19WHI-5235-PR, a LG cellular telephone, and marked as "Phone A" which was seized during the execution of a search warrant at 669 Kellner Ave, Columbus, Ohio on November 21, 2019. This phone was found inside a trash can in the master bedroom of the residence. In a

subsequent examination of this cellular telephone, investigators observed numerous text messages consistent with discussions involving narcotics trafficking. Also found on this cellphone were numerous photographs of a white crystal substance believed to be methamphetamine. In one of these photographs 413 grams of this substance is on a digital scale and eight (8) more large baggies of this same white crystal substance are lined up behind the scale. It should be noted that the same type of scale observed in this photograph was seized from Lashawn White's residence, 669 South Kellner Road, Columbus, Ohio on November 21, 2019. Based upon the countertop, the sink, the outlet behind the suspected meth, and the corner wall, investigators believe this photograph was taken at the suspected stash house located at 2849 Drew Heights Place, #206, Reynoldsburg, Ohio. This phone also contained a photograph of a large amount of U.S. currency on wooden countertop. Based upon the countertop, investigators believe this picture was taken in the "prep" room at 669 S. Kellner Road, Columbus, Ohio.

30.     During the execution of the State of Ohio search warrant on Lashawn White's residence at 669 South Kellner Drive, Columbus, Ohio on November 21, 2019, investigators located a Motorola cellular telephone (The Device), which was found in a drawer in the "prep" room of the residence. This telephone was seized by the Whitehall Police Department as item # 19WHI-5230-PR, and currently secured with the Franklin County Sheriff's Office (FCSO), 410 South High St., Columbus, Ohio 43215

31.     Based upon your Affiant's training and experience, your Affiant knows that drug traffickers often use their cell phones which they maintain dominion and control over in the commission of their offense. Similarly, your Affiant also knows that these individual's cellular telephones can contain evidence such as telephone numbers reflecting names, and addresses of

co-conspirators, and other associates as well as text messages, maps and photographs that could be considered as evidence of the offense under investigation.

32.    The Device is currently in the lawful possession of the Franklin County Sheriff's Office (FCSO), and it was seized by the Whitehall Police Department following the execution of a State of Ohio search warrant on her residence located at 669 South Kellner Road, Columbus, Ohio on November 21, 2019. Therefore, while Whitehall Police Department and FCSO might already have all necessary authority to examine the Device, I seek this additional warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

33.    The Device is currently in storage with the Franklin County Sheriff's Office, 410 South High Street, Columbus, Ohio 43215. In my training and experience, I know that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the Whitehall Police Department.

## TECHNICAL TERMS

34.    Based on my training and experience, I use the following technical terms to convey the following meanings:

    a.    Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or

14

traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video,

15

or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing

16

computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

35.     Based on my training, experience, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

36.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

17

37.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b.   Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c.   A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d.   The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual

18

information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

38. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

39. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

40. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Ryan Marvich
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me
on April 14, 2020:

Kimberly A. Jolson
United States Magistrate Judge

20